## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TIMOTHY BARNES,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>EQUIFAX INFORMATION SERVICES, LLC;<br>EXPERIAN INFORMATION SOLUTIONS, INC.;<br>TRANS UNION, LLC,<br><br>　　　　　　Defendants. | **Case No.: 2:23-cv-12241**<br><br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>1.　**FCRA, 15 U.S.C. § 1681 *et seq.*** |

Plaintiff Timothy Barnes ("Plaintiff"), through his counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. against Defendant Equifax Information Services, LLC ("Equifax"), Defendant Experian Information Solutions, Inc. ("Experian"), and Defendant Trans Union, LLC ("TransUnion") (referenced collectively as "Defendants").

### <u>INTRODUCTION</u>

1.　Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendants. Plaintiff contends that the Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p ("FCRA") (permitting actions to enforce liability in an appropriate United States District Court).

3.      Venue in the Eastern District of Michigan is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District since the Plaintiff resides here.

## PARTIES

4.      Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

5.      Plaintiff is a natural person who resides in the city of Northville, Wayne County, Michigan.

6.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7.      Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

8.      Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing

"consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

9.    Defendant TransUnion is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). On information and belief, TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. TransUnion's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. TransUnion can be served at their Michigan Registered Agent c/o CSC- Lawyers Incorporating Service Company located at 3410 Belle Chase Way, Ste 600, Lansing, MI, 48911.

10.    During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Michigan and conducted business in the State of Michigan on a routine and systematic basis.

11.    During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

12.    Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

**FACTUAL BACKGROUND**

*The Role of Credit Reporting Agencies*

13.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

14.    The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the

banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

15.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

16.     The FCRA is intended to ensure CRAs exercise their weighty responsibilities with fairness, impartiality, and respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

17.     Defendants are the three major consumer reporting agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the United States, who regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

18.     The Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

19.     The Defendants obtain consumer information from various sources. Some consumer information is sent directly to the Defendants, and other information must be

independently gathered by the Defendants, or acquired from third party providers, vendors or repositories, such as computerized reporting services like PACER or Lexis-Nexis.

20.     Defendants also obtain information from other CRAs, who commonly share information amongst themselves.

21.     Defendants regularly seek out and procure consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports that the Defendants sell to third parties for a profit.

22.     The diligence Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in the Defendants subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

23.     The Defendants' unreasonable policies, procedures, and algorithms consistently fail to report consumer information accurately in their credit reports, as required by 15 U.S.C. § 1681e(b).

24.     The Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished and reported information, and information contained in their own files.

25.     The vast majority of institutions that offer financial services rely upon consumer reports from CRAs (like Defendants) to make lending decisions.

26.     The information the Defendants include in a consumer report contributes to a consumers' overall creditworthiness and determines their FICO Scores.

27.     FICO Scores are calculated using information contained in the Defendants' consumer reports.

28.     FICO Scores and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

29.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

   a.   "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

   b.   The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

30.     Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by the Defendants in consumer reports.

31.     DTI compares the total amount a consumer owes to the total amount a consumer earns.

32.     The Defendants regularly provide information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by the Defendants.

33.     A consumer's income, however, is not included in their consumer report; only the amount of debt is.

34.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for consumers to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

35.     Accordingly, a consumer is negatively affected when a CRA reports that a consumer owes a debt with a balance on it when that debt was discharged in a bankruptcy.

36.     The Defendants are well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged.

37.     However, the Defendants regularly report inaccurate information about consumers' debts after a bankruptcy is completed, such as including a balance when there is none or not marking an account as discharged through bankruptcy.

38.     Rather than follow reasonable procedures to assure maximum possible accuracy, as it is required by the FCRA, the Defendants frequently report information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

39.     The Defendants regularly publish consumer information that conflicts with the information provided by data furnishers, included in the Defendants credit files, contained in public records that the Defendants regularly access, and/or sourced through the Defendants' independent and voluntary efforts.

40.     Such inaccuracies are made in violation of the FCRA at 15 U.S.C. § 1681e(b).

41.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against the Defendants for their inaccurate consumer reporting

following the completion of a Chapter 7 Bankruptcy, including failure to accurately report the effects of a Discharge Order in a Chapter 7 Bankruptcy.

42.     Therefore, Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, which often produce inaccurate public record information, balances, and account and payment statuses.

*Plaintiff's Discharged Debts*

43.     Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

44.     On or around January 28, 2019, Plaintiff filed a Chapter 13 Bankruptcy in the Michigan Eastern Bankruptcy Court, which was later dismissed on or around February 22, 2020.

45.     Because it was dismissed, no Order of Discharge was entered pertaining to the debts that were originally included in the Plaintiff's Chapter 13 filings.

46.     On or around November 23, 2022, Plaintiff filed a Chapter 7 Bankruptcy in the Michigan Eastern Bankruptcy Court.

47.     In the Plaintiff's recent Chapter 7 Bankruptcy filings, the Plaintiff included accounts from Diversified Members Credit Union ("DMCU") and Michigan First Credit Union ("MFCU").

48.     Plaintiff listed three (3) DMCU accounts on his Chapter 7 Bankruptcy Petition, collectively referred to as "DMCU Accounts."

49.     Plaintiff listed two (2) MFCU accounts on his Chapter 7 Bankruptcy Petition, collectively referred to as "MFCU Accounts."

50.     On or around February 28, 2023, Plaintiff received an Order of Discharge in his Chapter 7 Bankruptcy.

51.     On March 23, 2023, Plaintiff opened a credit card account with People Drive Credit Union ("PDCU"), with an account number starting with 4293450****, hereinafter "PDCU Account."

52.     Upon information and belief, the Defendants received notice of Plaintiff's bankruptcy filings through their independent collection of Plaintiff's consumer information through vendors such as Lexis-Nexis, as well as from furnishers that provided data regarding the individual tradelines featured on Plaintiff's consumer reports.

53.     The Defendants prepared one or more consumer reports concerning the Plaintiff after his bankruptcy was completed.

54.     The Defendants reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the date of the last status update.

55.     Despite being stated in the Plaintiff's Chapter 7 Bankruptcy filings, Defendant Equifax misreported the DMCU Accounts by reporting that these accounts still retained a balance and not stating that these accounts were discharged.

56.     Despite being stated in the Plaintiff's Chapter 7 Bankruptcy filings, Defendant Experian and Transunion misreported the MFCU Accounts by reporting that the accounts still retained a balance and not stating that the accounts were discharged.

57.     Additionally, despite receiving information pertaining to Plaintiff's Bankruptcy filings, Defendant Equifax misreported that Plaintiff filed for Chapter 13 Bankruptcy twice, when he only did so once.

*Plaintiff's Double Reported Debts*

58.    On March 23, 2023, Plaintiff opened a credit card account with People Drive Credit Union ("PDCU"), with an account number starting with 4293450****, hereinafter "PDCU Account."

59.    Defendant TransUnion misreported the PDCU Account by reporting that account information twice making it appear as if he has two liabilities to PDCU when in fact he only has one.

*Inaccuracies in Equifax's Reports*

60.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

61.    Upon information and belief, Defendant Equifax prepared and issued credit reports concerning the Plaintiff that included inaccurate and misleading information relating to the number of bankruptcies Plaintiff has filed as well as information related to the DMCU Accounts.

62.    On August 7, 2023, Defendant Equifax prepared and issued a credit report pertaining to the Plaintiff's credit information. A true and accurate copy of the relevant portion of the Equifax credit report is attached as Exhibit A, hereinafter, "Equifax Report."

63.    The Equifax Report inaccurately reports the status of the DMCU Accounts as "CHARGE_OFF." *See* Exhibit A.

64.    The DMCU Accounts also report a balance of $20,635, $3,866, and $997. *See id*.

65.    In actuality, the DMCU Accounts were included in Plaintiff's Chapter 7 Bankruptcy and were discharged in that bankruptcy.

66.    Additionally, the Equifax Report contains a section pertaining to bankruptcy filings that Plaintiff has made.

67.     The Equifax Report inaccurately reports that Plaintiff filed two (2) Chapter 13 bankruptcies.

68.     In actuality, the Equifax Report should have showed that the Plaintiff filed one (1) Chapter 13 bankruptcy.

69.     Defendant Equifax has been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

70.     Defendant Equifax has been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors.

71.     Defendant Equifax's reporting of the DMCU Accounts is patently inaccurate.

72.     Defendant Equifax's reporting of the number of Chapter 13 bankruptcies Plaintiff has filed is patently inaccurate.

73.     If not patently inaccurate, Defendant Equifax's reporting is materially misleading.

74.     As a result of the Defendant Equifax's failure to comply with the FCRA, the Plaintiff suffered concrete harm in the form of loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

*Inaccuracies in Experian's Reports*

75.     Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

76.     Upon information and belief, Defendant Experian prepared and issued credit reports concerning the Plaintiff that included inaccurate information related to a MFCU Account.

11

77.     On August 8, 2023, Defendant Experian prepared and issued its most recent credit report pertaining to the Plaintiff's credit information. A true and accurate copy of the relevant portion of the Experian credit report is attached as Exhibit B, hereinafter, "Experian Report."

78.     The Experian Report inaccurately reports the status of the MFCU Account as "Account charged off." *See* Exhibit B.

79.     The MFCU Account also reports a balance of $3,458. *See id*.

80.     In actuality, the MFCU Account were included in Plaintiff's Chapter 7 Bankruptcy and were discharged in that bankruptcy.

81.     Accordingly, the MFCU Accounts' status should be reported as discharged debts that were included in Plaintiff's Chapter 7 Bankruptcy.

82.     Defendant Experian has been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

83.     Defendant Experian's reporting of the MFCU Account is patently inaccurate.

84.     If not patently inaccurate, Defendant Experian's reporting is materially misleading.

85.     As a result of the Defendant Experian's failure to comply with the FCRA, the Plaintiff suffered concrete harm in the form of loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

### *Inaccuracies in TransUnion's Reports*

86.     Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

87.     Upon information and belief, Defendant TransUnion prepared and issued credit reports concerning the Plaintiff that included inaccurate information related to a MFCU Account.

88.     On August 7, 2023, Defendant TransUnion prepared and issued a credit report pertaining to the Plaintiff's credit information. A true and accurate copy of the relevant portion of the TransUnion credit report is attached as Exhibit C, hereinafter, "TransUnion Report."

89.     The TransUnion Report inaccurately reports the status of the MFCU Account as "Account charged off." *See* Exhibit C at 1-2.

90.     The MFCU Account also reports a balance of $3,458. *See id*.

91.     In actuality, the MFCU Account were included in Plaintiff's Chapter 7 Bankruptcy and were discharged in that bankruptcy.

92.     Accordingly, the MFCU Accounts' status should be reported as discharged debts that were included in Plaintiff's Chapter 7 Bankruptcy.

93.     Upon information and belief, Defendant TransUnion prepared and issued credit reports concerning the Plaintiff that included inaccurate and misleading information relating to his PDCU Account.

94.     On August 7, 2023, Defendant TransUnion prepared and issued its most recent credit report pertaining to the Plaintiff's credit information.

95.     The TransUnion Report inaccurately reports that there are two accounts from PDCU with the same account number and balance information. *See* Exhibit C at 3-6.

96.     As such, the inclusion of adverse reporting information of two accounts harm's Plaintiff's creditworthiness.

97.     Defendant TransUnion has been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

98.     Defendant TransUnion's reporting of the MFCU and PDCU Accounts is patently inaccurate.

99.     If not patently inaccurate, Defendant TransUnion's reporting is materially misleading.

100.    As a result of the Defendant TransUnion's failure to comply with the FCRA, the Plaintiff suffered concrete harm in the form of loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

*Plaintiff's Damages*

101.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

102.    As a preliminary matter, each Defendant reported inaccurate information pertaining to the Plaintiff in the Defendants' credit reports.

103.    Plaintiff's creditworthiness is lowered because the Defendants continue to misreport information related to Plaintiff's Accounts, Plaintiff's bankruptcy filings, and the status of those accounts after a discharge order is entered.

104.    As an individual attempting to improve his credit score for future credit transactions, the Plaintiff was harmed because of the Defendants incorrect reporting certain accounts.

14

105.    The Defendants' consumer reports indicating that the certain accounts were not charged off and still carries a balance causes severe damage to Plaintiff's creditworthiness and his financial wellbeing because those accounts were discharged in a bankruptcy and should show a zero balance.

106.    The inclusion of balances for accounts that were discharged raises the Plaintiff's DTI and harms his creditworthiness.

107.    The Defendants' inaccurate reporting of the accounts was published to multiple organizations, companies, and financial institutions by the Defendants after Plaintiff completed his Chapter 7 Bankruptcy.

108.    Potential credit grantors reviewed Plaintiff's consumer reports prepared by the Defendants, as evidenced by soft and hard pulls on Plaintiff's credit reports.

109.    These credit reports were created after the completion of Plaintiff's Chapter 7 Bankruptcy and after Plaintiff received an Order of Discharge.

110.    Notwithstanding the Defendants effort to correct the information regarding the Accounts, the Defendants continued to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors, as evidenced by the inquiries on the Plaintiff's credit report in the form of hard and soft pulls.

111.    On or around August 16, 2023, SoFi Bank, N.A. ("SoFi") denied Plaintiff a loan and referenced Defendant Experian and Defendant TransUnion as CRAs that SoFi relied on to make a decision regarding approving the loan.

112.    On or around August 16, 2023, Upgrade, Inc. ("Upgrade") denied a line of credit that Plaintiff applied for because of the information contained in the TransUnion report.

113.    On or around August 18, 2023, Plaintiff received a denial letter from Exxon Mobil Credit Card ("Exxon"). Exxon specifically referenced the Equifax Report and the number of bankruptcies reported by Defendant Equifax as the basis for its decision to deny Plaintiff's credit card application.

114.    On or around August 19, 2023, Republic Bank & Trust Company ("RBTC") denied Plaintiff's application for a line of credit and relied upon the TransUnion Report denial.

115.    Around this same time, Digital Federal Credit Union ("DCU") denied Plaintiff's loan application due to unpaid charged-off accounts.

116.    As a result of the Defendants' failure to comply with the FCRA, Plaintiff suffered concrete harm in the form of loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

117.    Plaintiff's consumer credit file and consumer reports were also reviewed by numerous other entities after the discharge of his bankruptcy; those entities viewed the erroneous information published by the Defendants.

118.    As a direct result of Defendants' inaccurate reporting, Plaintiff suffered damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

119.    As a direct result of Defendants' inaccurate reporting, Plaintiff also suffered actual damages in the form of attorneys' fees incurred.

120.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, disturbance of sleep, reputational damage, humiliation, stress, anger, frustration, shock, invasion of Plaintiff's privacy, embarrassment, and anxiety.

## COUNT I
## DEFENDANT EQUIFAX'S VIOLATION OF THE FCRA, 15 U.S.C. § 1681e(b)

121. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

122. Defendant Equifax reported the DMCU Accounts as accounts that still carry a balance despite the fact that these accounts were discharged through Plaintiff's bankruptcy.

123. Additionally, Equifax reported multiple Chapter 13 Bankruptcies for the Plaintiff even though he only filed one.

124. Pursuant to 15 U.S.C. § 1681e(b), the FCRA requires CRAs, like the Defendant Equifax, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information.

125. Defendant Equifax negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after a consumer completes their bankruptcy.

126. Defendant Equifax received notice of Plaintiff's bankruptcy through public records, independent collection of consumer information directly obtained by Equifax through sources of consumer information such as Lexis-Nexis, Equifax's own files, and information provided by data furnishers, yet Equifax misapplied that information.

127. Defendant Equifax's unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, like Plaintiff, who file bankruptcies.

128. Defendant Equifax's unreasonable policies and procedures causes it to regularly report consumer information without verifying its accuracy.

129.    Defendant Equifax's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by 15 U.S.C. § 1681e(b).

130.    Defendant Equifax knows the information that it reports about consumers' bankruptcies is often inconsistent with public records and its own files.

131.    In this case, the inaccurately reported DMCU Accounts were accounts that Defendant Equifax knew was included in Plaintiff's Chapter 7 Bankruptcy.

132.    Additionally, Defendant Equifax was aware of what bankruptcies the Plaintiff has filed and when.

133.    However, Defendant Equifax reported the DMCU Accounts as accounts that were charged off and still carried a balance and reported that the Plaintiff filed two Chapter 13 bankruptcies.

134.    Defendant Equifax regularly conducts voluntary public records searches with the intention of including bankruptcy information on the consumer reports its sells to other parties for a profit.

135.    In this case, Defendant Equifax knew or should have known that the DMCU Accounts were included in the Plaintiff's Chapter 7 Bankruptcy.

136.    Defendant Equifax knew or should have known which bankruptcies to report on Plaintiff's consumer report.

137.    Unfortunately, Defendant Equifax willfully and consciously breached its duties as a CRA and deprived Plaintiff of his right to a fair and accurate consumer report.

138.    Despite knowledge of their legal obligations, Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer report.

139.    Defendant Equifax knew or should have known the information it reported about the Plaintiff was inaccurate.

140.    Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Equifax knew or should have known that the information Equifax are reporting is inaccurate, and/or otherwise contradicted by information known by Equifax, reported to Equifax, and/or reasonably available to Equifax.

141.    Defendant Equifax's violations of 15 U.S.C. § 1681e(b) were willful.

142.    Alternatively, Defendant Equifax's violations of 15 U.S.C. § 1681e(b) were negligent.

143.    Defendant Equifax's inaccurate reporting damaged Plaintiff's creditworthiness.

144.    Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Defendant Equifax for failing to report Plaintiff's information accurately.

145.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

146.    Defendant Equifax's actions are a direct and proximate cause of Plaintiff's damages.

147.    Defendant Equifax's actions are a substantial factor in Plaintiff's damages.

148.    Therefore, Defendant Equifax is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## <u>COUNT II</u>
## DEFENDANT EXPERIAN'S VIOLATION OF THE FCRA, 15 U.S.C. § 1681e(b)

149.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

150.    Defendant Experian reported the MFCU Account as an account that still carries a balance despite the fact that this account was discharged through Plaintiff's bankruptcy.

151.    Pursuant to 15 U.S.C. § 1681e(b), the FCRA requires CRAs, like Defendant Experian, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information.

152.    Defendant Experian negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after a consumer completes their bankruptcy.

153.    Defendant Experian received notice of Plaintiff's bankruptcy through public records, independent collection of consumer information directly obtained by Experian through sources of consumer information such as Lexis-Nexis, Experian's own files, and information provided by data furnishers, yet Experian misapplied that information.

154.    Defendant Experian's unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, like Plaintiff, who file bankruptcies.

155.    Defendant Experian's unreasonable policies and procedures causes it to regularly report consumer information without verifying its accuracy.

156.    Defendant Experian's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by 15 U.S.C. § 1681e(b).

157.    Defendant Experian knows the information that it reports about consumers' bankruptcies is often inconsistent with public records and its own files.

158.    In this case, the inaccurately reported the MFCU Account was an account that Defendant Experian knew was included in Plaintiff's Chapter 7 Bankruptcy.

159.    However, Defendant Experian reported the MFCU Account as an account that was charged off and still carried a balance.

160.    Defendant Experian regularly conducts voluntary public records searches with the intention of including bankruptcy information on the consumer reports its sells to other parties for a profit.

161.    In this case, Defendant Experian knew or should have known that the MFCU Account was included in the Plaintiff's Chapter 7 Bankruptcy.

162.    Unfortunately, Defendant Experian willfully and consciously breached its duties as a CRA and deprived Plaintiff of his right to a fair and accurate consumer report.

163.    Despite knowledge of their legal obligations, Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer report.

164.    Defendant Experian knew or should have known the information it reported about the Plaintiff was inaccurate.

165.    Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Experian knew or should have known that the information Experian is reporting is inaccurate, and/or otherwise contradicted by information known by Experian, reported to Experian, and/or reasonably available to Experian.

166.    Defendant Experian's violations of 15 U.S.C. § 1681e(b) were willful.

167.    Alternatively, Defendant Experian's violations of 15 U.S.C. § 1681e(b) were negligent.

168.    Defendant Experian's inaccurate reporting damaged Plaintiff's creditworthiness.

169.    Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Defendant Experian for failing to report Plaintiff's information accurately.

170.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

171.    Defendant Experian's actions are a direct and proximate cause of Plaintiff's damages.

172.    Defendant Experian's actions are a substantial factor in Plaintiff's damages.

173.    Therefore, Defendant Experian is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq.*

## COUNT III
## DEFENDANT TRANSUNION'S VIOLATION OF THE FCRA, 15 U.S.C. § 1681e(b)

174.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

175.    Defendant TransUnion reported the MFCU Account as an account that still carries a balance despite the fact that this account was discharged through Plaintiff's bankruptcy.

176.    Additionally, Defendant TransUnion reported the PDCU Account twice on Plaintiff's consumer report.

177. Pursuant to 15 U.S.C. § 1681e(b), the FCRA requires CRAs, like Defendant TransUnion, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information.

178. Defendant TransUnion negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after a consumer completes their bankruptcy.

179. Defendant TransUnion's unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, like Plaintiff.

180. Defendant TransUnion's unreasonable policies and procedures causes it to regularly report consumer information without verifying its accuracy.

181. Defendant TransUnion's unreasonable policies, procedures and/or algorithms consistently fail to identify and update debts as required by 15 U.S.C. § 1681e(b).

182. Defendant TransUnion's knows the information that it reports about consumers' bankruptcies and account information is often inconsistent with public records and its own files.

183. In this case, the inaccurately reported the MFCU Account was an account that Defendant TransUnion knew was included in Plaintiff's Chapter 7 Bankruptcy.

184. However, Defendant TransUnion reported the MFCU Account as an account that was charged off and still carried a balance.

185. In this case, Defendant TransUnion knows that there is only one PDCU Account with an account number starting with 4293450****.

186. However, Defendant TransUnion reported the PDCU Account twice, with a balance for both entries.

187.    Unfortunately, Defendant TransUnion willfully and consciously breached its duties as a CRA and deprived Plaintiff of his right to a fair and accurate consumer report.

188.    Despite knowledge of their legal obligations, Defendant TransUnion violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer report.

189.    Defendant TransUnion knew or should have known the information it reported about the Plaintiff was inaccurate.

190.    Defendant TransUnion violated 15 U.S.C. § 1681e(b) by failing to report accurate information when TransUnion knew or should have known that the information TransUnion is reporting is inaccurate, and/or otherwise contradicted by information known by TransUnion, reported to TransUnion, and/or reasonably available to TransUnion.

191.    Defendant TransUnion's violations of 15 U.S.C. § 1681e(b) were willful.

192.    Alternatively, Defendant TransUnion's violations of 15 U.S.C. § 1681e(b) were negligent.

193.    Defendant    TransUnion's    inaccurate    reporting    damaged    Plaintiff's creditworthiness.

194.    Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Defendant TransUnion's for failing to report Plaintiff's information accurately.

195.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

196. Defendant TransUnion's actions are a direct and proximate cause of Plaintiff's damages.

197. Defendant TransUnion's actions are a substantial factor in Plaintiff's damages.

198. Therefore, Defendant TransUnion is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a) Declaratory judgment that Defendant Equifax, Defendant Experian, and Defendant TransUnion violated the FCRA at 15 U.S.C. § 1681e(b);

(b) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2); and

(f) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

Dated: August 31, 2023                               Respectfully submitted,

**STEIN SAKS, PLLC**

*/s/ Yaakov Saks*
By: Yaakov Saks, Esq.
One University Plaza, Suite 620
Hackensack, NJ 07601
Phone: 201-282-6500 ext. 101
Fax: 201-282-6501
ysaks@steinsakslegal.com